UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CLAYTON CRAINE, | No. CV 09-8851-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on December 8, 2009, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on March 25, 2010, and December 22, 2010. Pursuant to the Court's Order, the parties filed a Joint Stipulation on October 21, 2010, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on August 24, 1963. [Administrative Record ("AR") at 31, 61, 127.] He has an eleventh grade education and past relevant work experience as a metal bender, construction worker, store stocker, telephone technician, warehouseman, and delivery driver. [AR at 32, 145-46, 148, 151-62, 166-73.]

On April 20, 2007, plaintiff protectively filed his application for Supplemental Security Income payments, alleging that he has been unable to work since April 20, 2007, due to problems with his lower back, neck, hand, elbow, knee, and wrist. [AR at 21, 127-33, 139-50.] After plaintiff's application was denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 63-74.] A hearing was held on January 7, 2009, at which time plaintiff appeared with counsel and testified on his own behalf. A medical expert and a vocational expert also testified. [AR at 29-60.] On May 4, 2009, the ALJ issued an unfavorable decision. [AR at 18-28.] When the Appeals Council denied plaintiff's request for review of the hearing decision on August 12, 2009, the ALJ's decision became the final decision of the Commissioner. [AR at 5-8.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well

as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled

and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since April 20, 2007, the date of his application for Supplemental Security Income payments. [AR at 23.] At step two, the ALJ concluded that plaintiff has the following severe impairments: "[d]isorders of the lumbar spine, right wrist, left knee and shoulders; gout; and lupus." [Id.] At step three, the ALJ concluded that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 24.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[1] to perform light work,[2] except that plaintiff "is able to stand and/or walk 4 hours out of a[n] 8-hour workday. [Plaintiff] is occasionally able to bend, stoop, and climb ramps and stairs; but is unable to balance or climb ladders, scaffolds, or ropes. [Plaintiff] is occasionally able to reach above the shoulder, and frequently able to finger and frequently able to forcefully handle (grip, grasp, and twist). [Plaintiff] should avoid all exposure to unprotected heights." [Id.] At step four, the ALJ concluded that plaintiff can perform his past relevant work as a delivery driver-courier. [AR at 27.] Accordingly, the ALJ found plaintiff not disabled. [AR at 28.]

/

---

[1]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2]    Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

# V.

# THE ALJ'S DECISION

Plaintiff contends that the ALJ erred in rejecting: (1) the opinion of plaintiff's treating physician; and (2) plaintiff's subjective testimony. [Joint Stipulation ("JS") at 4.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**TREATING PHYSICIAN'S OPINION**

Plaintiff contends that the ALJ erred in rejecting the opinion of treating physician Dr. W. Joseph Atiya. [JS at 4-7.]

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician. However, the ALJ may only give less weight to a treating physician's opinion that conflicts with the medical evidence if the ALJ provides explicit and legitimate reasons for discounting the opinion. See Lester, 81 F.3d at 830-31 (the opinion of a treating doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record); see also Orn, 495 F.3d at 632-33 ("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'") (citations

omitted); Social Security Ruling[3] 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).

The record shows that plaintiff received medical treatment from January 2006 to at least October 2008 from the three physicians at Primary Care Medical Group of Hemet Valley -- Dr. Atiya, Dr. Robert Loera, and Dr. Ingela Elhenawi -- for, among other things, lower back pain. [See AR at 243-47, 257-301.] On April 8, 2008, Dr. Atiya completed a Statement of Provider form, in which he opined that plaintiff has a medically verifiable condition that would prevent him from performing certain tasks, his condition began in 2001 and is chronic, he is actively seeking treatment, and he is unable to work.[4] [AR at 287.] On October 28, 2008, Dr. Atiya completed a Multiple Impairment Questionnaire form, in which he diagnosed plaintiff as having intractable back pain, post laminectomy, and degenerative arthritis of the lower spine; asserted that plaintiff's prognosis was poor; and stated that plaintiff's clinical condition and pain as well as his old medical history and x-rays supported the diagnosis and prognosis. [AR at 292-93.] Dr. Atiya described plaintiff's symptoms as including intractable and persistent low back pain and leg pain that lasts all day for which plaintiff is treated with Norco, a prescription pain medication. [AR at 293-94, 296.] Dr. Atiya opined, among things, that plaintiff has a "severe" level of pain of 9 out of 10; he can sit and stand/walk each for one hour out of an eight-hour workday; he should not sit continuously in a work setting; he would need to get up and move around every one to two hours and would need to wait two hours before sitting again; he can never lift or carry any weight; he is significantly limited in his abilities to repetitively reach, handle, finger, or lift; his symptoms would likely increase if he were placed in a competitive work environment; his symptoms would frequently interfere with his ability to concentrate and pay attention; his impairments are ongoing (i.e., expected to last at

---

[3] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[4] On May 29, 2007, Dr. Loera completed a Statement of Provider form expressing a nearly identical opinion concerning plaintiff's condition as the opinion expressed by Dr. Atiya in the 2008 Statement of Provider form, except that Dr. Loera opined that plaintiff's condition began in 1997, rather than in 2001. [See AR at 286.]

least 12 months); he is not a malingerer; during an eight-hour workday, he would need to take unscheduled one-hour breaks every one to two hours; his impairments would likely produce "good" and "bad" days; he would likely miss work more than three times a month as a result of his impairments or treatment; and he should not push, pull, kneel, bend, or stoop. [AR at 294-99.]

In the decision, the ALJ asserted that he rejected Dr. Atiya's opinions expressed in the Statement of Provider and Multiple Impairment Questionnaire forms as "brief, conclusory, and inadequately supported by clinical findings." [AR at 27.] Specifically the ALJ asserted that no objective documentation or clinical findings supported Dr. Atiya's opinions; Dr. Atiya did not provide a clinical treatment history "to explain why [plaintiff] has back pain, what has been prescribed to treat his back pain and [plaintiff's] response to the various treatment options;" and Dr. Atiya "only" saw plaintiff up to nine times since June 2006 during "routine follow up visits." [Id.] In rejecting Dr. Atiya's opinions, the ALJ also cited the medical expert's hearing testimony[5] that there was a lack of objective evidence supporting the extent of the limitations assessed by Dr. Atiya. [AR at 27; see also AR at 32-38.]

The Court concludes that the ALJ provided insufficient reasons for rejecting Dr. Atiya's treating opinion. First, the ALJ's bare assertion that Dr. Atiya's opinion was not sufficiently supported by the treatment record or the objective medical findings is not a proper reason, by itself, for rejecting the opinion because it fails to reach the level of specificity required for rejecting a treating physician's opinion. See Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required ... The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.") (footnote omitted). An ALJ can meet the requisite specific and legitimate standard for rejecting a treating physician's opinion deemed inconsistent with or unsupported by the medical evidence

---

[5] The ALJ referred to the medical expert who testified at the administrative hearing as Dr. Landau. [See AR at 24, 27.] However, the Court observes that Dr. John Orlando was the medical expert who testified at plaintiff's hearing. [See AR at 32-38.]

"by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). Here, the ALJ's conclusory assertion that Dr. Atiya's opinion was inadequately supported by the clinical findings, objective evidence, or the frequency of plaintiff's treatment [see AR at 27] does not constitute a specific and legitimate reason for rejecting Dr. Atiya's treating opinion. See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (finding that rejecting the treating physician's opinion on the ground that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed"); see also, e.g., Payne v. Astrue, 2009 WL 176071, at *6 (C.D. Cal. Jan. 23, 2009) (finding inadequate an ALJ's conclusory rejection of a treating physician's opinion as inconsistent with the medical treatment, where the ALJ did not specify how the treatment record was inconsistent with the physician's opinion).

Furthermore, the ALJ's assertions that Dr. Atiya's opinion was not supported by any objective medical evidence or clinical findings and that Dr. Atiya did not describe plaintiff's treatment history are not entirely accurate. Dr. Atiya stated in the Multiple Impairment Questionnaire form that his assessment of plaintiff's limitations was based on plaintiff's clinical condition, pain symptoms, old x-rays, and treatment history [see AR at 292-93], and that he had treated plaintiff from January 2006 to October 2008 with pain medication. [AR at 293, 296.] Plaintiff's treatment records corroborate Dr. Atiya's statement, showing that plaintiff was treated for lower back pain with pain medication by the physicians of Primary Care Medical Group of Hemet Valley during the time period specified by Dr. Atiya. [See AR at 243-47, 257-301.] To the extent the ALJ overlooked or ignored this evidence to support his rejection of Dr. Atiya's opinion, that was errroneous. See Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion.)

Moreover, to the extent the ALJ rejected Dr. Atiya's opinion based on the number of times he treated plaintiff, such a basis for rejection was improper because a treating physician's opinion should be afforded great weight so long as the physician has seen the claimant "a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment." 20 C.F.R

§§ 404.1527(d)(2)(i), 416.927(d)(2)(i). The ALJ provided no basis for assuming that Dr. Atiya did not form a longitudinal picture of plaintiff's impairments in the course of seeing plaintiff nine times from January 2006 to October 2008. Further, the ALJ's apparent rejection of Dr. Atiya's opinion on the basis that the ALJ found the treatment to be "routine" or conservative was also erroneous, as the record shows that Dr. Atiya treated plaintiff with prescription pain medication [see, e.g., AR at 282, 284], and the ALJ did not indicate any appropriate treatment that was available to plaintiff that Dr. Atiya did not prescribe. The record also reveals that plaintiff underwent a spine fusion surgery, apparently in 2001 [see AR at 235], and neither plaintiff's treating physicians nor the ALJ indicated what more plaintiff should have done to treat his continuing back pain. See Yang v. Barnhart, 2006 WL 3694857, at *4 (C.D. Cal. Dec. 12, 2006) (ALJ's characterization of the treating physician's treatment of plaintiff as "conservative" did not support the ALJ's rejection of the physician's opinion, where plaintiff was prescribed pain medication to alleviate his back pain and "[n]either the Agency nor the ALJ has suggested what more radical treatment would have been appropriate"); Cronin v. Astrue, 2010 WL 702033, at *3 (C.D. Cal. Feb. 25, 2010) (ALJ erred in rejecting as conservative a treating physician's treatment of plaintiff's pain symptoms with medication management, where "the ALJ failed to articulate what other treatment was available").

Next, insomuch as the ALJ rejected Dr. Atiya's opinion in favor of the opinion of the nonexamining medical expert who testified at the hearing, that was also error. A nonexamining physician's opinion with nothing more cannot constitute substantial evidence to support the ALJ's rejection of Dr. Atiya's opinion. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) ("The opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician."); Lester, 81 F.3d at 831-32 (holding that the opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of a treating physician). A contrary medical opinion may constitute substantial evidence upon which the ALJ may rely in evaluating the weight to afford a treating physician's opinion only when the contrary opinion is based on independent clinical findings. See Andrews, 53 F.3d at 1041. Here, however, it appears that the medical expert's testimony was based on the same clinical findings

9

upon which Dr. Atiya based his own opinion (i.e., plaintiff's treatment history). [See AR at 35-36, 293.] Accordingly, the medical expert's testimony did not constitute substantial evidence to contradict Dr. Atiya's treating opinion. See Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (ALJ improperly rejected treating physician's opinion based on the opinion of a non-treating physician where "the *findings* of the non-treating physician were the same as those of the treating physician[, and] [i]t was his *conclusions* that differed") (emphasis in original); Jefferson v. Astrue, 2010 WL 4366389, at *3 (C.D. Cal. Oct. 26, 2010) (ALJ erred in rejecting treating physician's findings based only on the testimony of a nonexamining medical expert, where the medical expert premised his opinion on the same evidence as the treating physician).

In any event, the ALJ may not properly reject a treating physician's opinion by merely referencing the contrary findings of another physician.  Even when contradicted, a treating physician's opinion is still entitled to deference, and the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. See Orn, 495 F.3d at 632-33; SSR 96-2p; see also Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) ("to reject the opinion of a treating physician 'in favor of a conflicting opinion of [a non-treating] physician[,]' an ALJ still must 'make[] findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record'") (quoting Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)).  Here, the ALJ erred in failing to expressly explain how Dr. Atiya's findings conflicted with other parts of the medical evidence and why his opinion was rejected in favor of a conflicting medical opinion.  The ALJ's rejection of Dr. Atiya's opinion without expressly setting forth detailed, legitimate reasons for doing so was improper.  See Hostrawser v. Astrue, 364 Fed.Appx. 373, 376-77 (9th Cir. 2010) (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3) (ALJ erred in affording nontreating physicians' opinions controlling weight over the treating physicians' opinions, where the ALJ did not provide a thorough summary of the conflicting clinical evidence and his interpretations thereof with an explanation as to why his interpretations

of the evidence, rather than those of the treating physicians, were correct). Remand is warranted on this issue.[6]

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate in order for the ALJ to reconsider Dr. Atiya's opinion. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: January 3, 2011

/s/ Paul L. Abrams
_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[6] As the ALJ's determination of plaintiff's credibility may be impacted by further consideration of Dr. Atiya's opinion, the Court exercises its discretion not to consider plaintiff's contention that the ALJ improperly considered his subjective testimony. [See JS at 11-14.]